UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

ARTHUR NEAL ATTERBERRY, JR.                                              PLAINTIFF

VERSUS                                               CIVIL ACTION NO. 2:20CV23-KS-RPM

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION                                                          DEFENDANT

**REPORT AND RECOMMENDATIONS**

This matter is before the Court on *pro se* Plaintiff Arthur Neal Atterberry, Jr.'s complaint appealing the Commissioner of Social Security's (Commissioner) denial of his application for disability insurance benefits and supplemental security income under the Social Security Act (the Act). Atterberry filed his application for disability benefits on July 13, 2017, alleging an onset date of March 15, 2017. Doc. [13] at 175-82. He alleges disability due to seizures and epilepsy, depression disorder, and anxiety disorder. *Id.* at 198. His application was denied at the initial level and on reconsideration. *Id.* at 92-120, 122-51. Atterberry requested and was granted a hearing before an administrative law judge (ALJ). *Id.* at 151. The ALJ conducted the hearing on January 25, 2019. *Id.* at 40-75.

On June 26, 2019, the ALJ issued a decision finding that Atterberry was not disabled. *Id.* at 24-33. In his findings, the ALJ concluded that Atterberry has severe impairments of schizoaffective disorder; bipolar disorder; depression; pseudo seizures; and degenerative joint disease of the knees. *Id.* at 27. Based on these severe impairments, the ALJ concluded that Atterberry has the residual functional capacity (RFC) to perform light work, with certain additional limitations. *Id.* at 29. Relying on the testimony of a vocational expert, the ALJ found that Atterberry was able to perform past relevant work as a fast food worker and in sales; therefore, he was not considered disabled under the Act. *Id.* at 32.

The Appeals Council granted Atterberry's request for review of the ALJ's decision. *Id.* at 7-14. In a decision dated December 11, 2019, the Appeals Council adopted the ALJ's conclusions regarding severe impairments and RFC but disagreed with the ALJ's conclusion that Atterberry was capable of performing past relevant work. *Id.* at 10-11. Nevertheless, the Appeals Council determined that Atterberry was not disabled because he was capable of performing other jobs existing in significant numbers in the national economy. *Ibid.*

In his *pro se* complaint, Atterberry alleges he has been hospitalized nine times because of seizures. Doc. [1]. He further alleges that the Commissioner erred by not questioning a neurologist. *Ibid.* On February 26, 2020, Atterberry submitted a one-page "Memorandum Brief", with medical records attached dating from July 3, 2018, through January 1, 2019, as well as a DVD. *See* Doc. [5]. In the "Memorandum Brief", Atterberry argues that he has problems with depression and severe seizures. He asserts he has not been able to hold a job because of the seizures. On August 20, 2020, Atterberry submitted an additional medical record from an August 18, 2020, emergency room visit. Doc. [10]. Then on March 8, 2021, he submitted for the Court's review medical records for treatment dated February 20, 2021, through March 2, 2021. Doc. [14].

On April 20, 2021, the Court entered a show cause order directing Atterberry to advise the Court whether he intended for the "Memorandum Brief", filed on February 26, 2020, to be the memorandum brief contemplated by the paragraph 2(a) of the Court's "Order Setting Deadlines and Briefing Schedule". Doc. [15]. Atterberry filed a timely response to the Court's show cause order and indicated that he did not intend "to add anything new". Doc. [16]. At the Court's direction, the Commissioner then filed on June 23, 2021, a response to Atterberry's "Memorandum Brief." Doc. [17] [18]. This matter is now ripe for consideration.

**<u>Law and Analysis</u>**

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the Commissioner's decision is supported by substantial evidence, then the findings are conclusive and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court is not permitted to "reweigh the evidence in the record, nor try any issues de novo, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5). The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §

404.1520(a), § 404.920(a).  Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work.  *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step.  *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987).  Therefore, if the claimant proves that he is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy.  The burden then shifts back to the claimant to establish that he cannot perform this alternative employment.  *Id.*

Liberally construed, Atterberry's complaint and "Memorandum Brief" raise the following issue:  Whether the ALJ erred in his RFC assessment for limitations attributable to Atterberry's pseudo seizures and depression.  Atterberry asserts that he is not capable of working because of severe seizures and suggests that depression plays a role in his inability to work as well.  The undersigned finds that substantial evidence supports the ALJ's findings.

In his analysis, the ALJ took into consideration limitations attributable to Atterberry's pseudo seizures and depression.  With respect to seizures, the ALJ found that Atterberry's CT scans and MRIs of the brain displayed normal findings.  Doc. [13] at 30.  This finding is supported by the medical records.  *See id.* at 325, 983, 986.  The ALJ further pointed out that a July 2018 EEG monitoring over a 72-hour period showed no seizure-like activity.  *Id.* at 30, 986.  Moreover, the ALJ found that treatment providers concluded that Atterberry is not epileptic but

rather was experiencing pseudo seizures. *Id.* at 30. Specifically, on May 3, 2019, Dr. Keith Jones opined that Atterberry's "convulsions are non-epileptic events (pseudoseizures) based on review of all data available and history/physical examination/my witness of one of these events during a previous admission". *Id.* at 990. Dr. Jones had performed an earlier neurology consult, dated June 27, 2018, discussing Atterberry's history of seizures. *Id.* at 370. Based on the foregoing, the undersigned concludes that substantial evidence supports the ALJ's conclusion that Atterberry suffers from pseudo seizures. The ALJ then accounted for Atterberry's pseudo seizures by limiting him to light work with no climbing ladders, ropes or scaffolds and no exposure to moving machinery or unprotected heights. *Id.* at 30.

With respect to depression, the ALJ concluded that Atterberry's depression, along with other mental conditions, constitutes a severe impairment. When determining Atterberry's limitations, the ALJ found Dr. Patsy Zakaras' opinion to be "persuasive". Doc. [13] at 31. Dr. Zakaras conducted a consultative examination and found Atterberry to be cooperative and friendly with logical thought process and intact memory, judgment, and cognitive functioning. *Id.* at 1025-26. Dr. Zakaras opined that Atterberry has "unspecified depressive disorder" but that "he seems capable of performing simple routine, repetitive tasks"; "appears capable of following and understanding directions"; and "appears capable of relating to others and interacting with others." *Id.* at 1026. The ALJ also relied on Atterberry's testimony regarding his capabilities and daily activities. *Id.* at 30-31; *see Leggett v. Chater*, 67 F.3d 558, 565 n.12 (5th Cir. 1995) ("It is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability status."). Atterberry reported significant improvement in symptoms with treatment. *Id.* at 30. He indicated he has no difficulty managing personal care, following instructions, shopping, or going places alone. *Id.* at 31. He is also able to do household chores

5

and has been able to work despite impairments. *Ibid.* The ALJ accounted for any limitations resulting from Atterberry's mental impairment by restricting him to simple, routine, repetitive tasks with only occasional interaction with the public or large crowds. *Id.* at 30. Dr. Zakaras' opinion and Atterberry's own testimony constitute substantial evidence in support of the ALJ's finding.

Atterberry does not identify any specific error in the ALJ's findings. He merely asserts in a conclusory fashion that his seizures and depression prevent him from working. The ultimate question regarding a claimant's ability to work is a decision reserved for the Commissioner. *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). As explained above, the ALJ took into account Atterberry's pseudo seizures and depression when crafting an RFC. Relying on the testimony of a vocational expert, the Commissioner concluded that, given Atterberry's RFC, he can perform jobs that exist in significant numbers in the national economy. The vocational expert's testimony constitutes substantial evidence supporting this conclusion. *See Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000).

Atterberry has submitted medical records in support of his complaint. The documents submitted on February 26, 2020, are copies of records already considered by the ALJ and the Appeals Council and therefore do not constitute new evidence. Doc. [5]. Records submitted by Atterberry on August 25, 2020, and March 8, 2021, relate to treatment Atterberry received after the Appeals Council's December 11, 2019, decision. Doc. [10] [14]. These constitute new evidence which require some additional consideration by the Court. On August 25, 2020, Atterberry submitted a one-page Emergency Department Discharge Instruction, indicating that he received treatment on August 18, 2020, for "Epilepsy seizure, generalized, convulsive." Doc. [10-1]. On March 8, 2021, he then submitted seven pages of additional records from Forrest

General Hospital Critical Care.  These records indicated a diagnosis of "epilepticus", with a list of prescriptions.  Doc. [14-1].

When considering new evidence, the Court is "limited to determining whether to remand for the consideration of the newly presented evidence." *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989).  Remand is appropriate when the evidence is new, material, and there is good cause for failing to incorporate the evidence into the record in the prior proceeding.  *Ibid.* The ALJ considered Atterberry's other medical records, which included a well-documented history of seizure-like activity and possible "epilepticus".  *See e.g.* Doc. [13] at 302, 314, 316, 318-19, 321-22, 324, 343, 348, 350, 358-59, 365-66, 369-70, 373, 375, 378, 384, 386, 389-90, 406, 420.  The new medical records do not identify any additional limitations or offer any new diagnosis.  The ALJ ultimately relied on Dr. Jones, who considered Atterberry's history of seizure-like activity and concluded that Atterberry suffers from non-epileptic, pseudo seizures.  Based on this medical opinion, the ALJ crafted limitations accounting for Atterberry's pseudo seizures and restricting him from certain types of activities, i.e., no climbing ladders, ropes or scaffolds and no exposure to moving machinery or unprotected heights.  Doc. [13] at 30.  Substantial evidence supported the ALJ's RFC determination.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that the Commissioner's decision be AFFIRMED.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court.  A party filing objections must specifically identify

those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED AND ADJUDGED, this the 28th day of July 2021.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE